Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| CORPORACIÓN PARA LA DEFENSA DEL POSEEDOR DE LA LICENCIA DE ARMAS DE PUERTO RICO, INC. (CODEPOLA) y otros<br><br>Apelantes<br><br>v.<br><br>ACCIÓN SOCIAL Y PROTECCIÓN AMBIENTAL, INC., (ASPA) y otros<br><br>Apelados | TA2025AP00549 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Civil Núm.: SA2022CV00024 consolidado SA2022CV00025 (301)<br><br>Sobre: Recurso Extraordinario al Amparo de la Regla 57.1, *Injunction* Preliminar y Permanente; Difamación y Libelo |

Panel integrado por su presidenta, la jueza Grana Martínez, el juez Rodríguez Flores y la jueza Álvarez Esnard[1].

Álvarez Esnard, Jueza Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 29 de mayo de 2026.

Comparecen ante nos la Corporación para la Defensa del Poseedor de la Licencia de Armas de Puerto Rico, Inc. ("CODEPOLA"), el señor Ariel Torres Meléndez ("señor Torres Meléndez"), la señora Ixia Lee Castro Santana ("señora Castro Santana") y la Comunidad de Bienes compuesta por ambos (en conjunto, "Apelantes") mediante *Apelación* presentada el 17 de noviembre de 2025, a los fines de solicitar la revocación de la *Sentencia* emitida el 11 de junio de 2025,[2] enmendada el 14 de julio

---

[1] Mediante Orden Administrativa OATA-2025-156 se designa a la Hon. Alicia Álvarez Esnard en sustitución del Hon. Félix Figueroa Cabán, ya que este dejó de ejercer funciones como juez del Tribunal de Apelaciones.
[2] Véase SUMAC-TPI, Entrada Núm. 290.

de 2025[3] y notificada el 15 de julio de 2025 por el Tribunal de Primera Instancia, Sala Superior de Guayama ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el foro primario declaró *Ha Lugar* la *Solicitud de Sentencia Sumaria para la Causa de Acción de Difamación* presentada el 11 de junio de 2024 por Acción Social y Protección Ambiental, Inc. ("ASPA"); el señor José J. Cora Collazo ("señor Cora Collazo") y la Sociedad Legal de Gananciales compuesta por él y su esposa, Fulana de Tal; el señor Rafael Díaz Casiano ("señor Díaz Casiano") y la Sociedad Legal de Gananciales compuesta por él y su esposa, María Meléndez Delannoy y otros con nombres ficticios (en conjunto, "Apelados"). Como consecuencia de esta sentencia, desestimó la reclamación por alegada difamación, libelo y calumnia presentada por los Apelantes.

En desacuerdo, el Apelante presentó *Reconsideración* el 30 de junio de 2025,[4] la cual fue declarada *No Ha Lugar* mediante *Resolución*,[5] emitida y notificada el 3 de julio de 2025. Una vez se emitió *Sentencia Enmendada*,[6] el Apelante nuevamente presentó *Reconsideración*,[7] la cual fue declarada *No Ha Lugar* mediante *Resolución Final*,[8] emitida el 27 de agosto de 2025 y notificada el 16 de octubre de 2025.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** la *Sentencia* apelada.

## I.

El 30 de enero de 2022, la parte Apelante instó *Solicitud de Interdicto Preliminar* y *Demanda* contra los Apelados, en los casos SA2022CV00024 y SA2022CV00025.[9] Estos fueron posteriormente consolidados por estar íntimamente relacionados. En esencia, la

---

[3] Véase SUMAC-TPI, Entrada Núm. 300.
[4] Véase SUMAC-TPI, Entrada Núm. 294.
[5] Véase SUMAC-TPI, Entrada Núm. 295.
[6] Véase SUMAC-TPI, Entrada Núm. 300.
[7] Véase SUMAC-TPI, Entrada Núm. 301.
[8] Véase SUMAC-TPI, Entrada Núm. 316.
[9] Véase SUMAC-TPI, Entrada Núm. 1.

Parte Apelante "presentó su solicitud de interdicto al amparo de la Regla 57.1 de nuestras Reglas de Procedimiento Civil, alegando que ASPA, los demás demandados y los miembros de esta entidad, se habían dedicado a hacer manifestaciones públicas y privadas difamatorias en contra de un polígono de tiro, sin tener evidencia científica ni ninguna otra que sustente sus expresiones".[10]

En esencia, arguyó que los Apelados expresaron que los Apelantes "[habían] estado creando un depósito de neumáticos en el área del proyecto y que [arriesgaban] contaminar el Acuífero del Sur".[11] Además, esbozaron que los Apelados los habían difamado, llamándolos "asesino[s] ambiental[es], criminal[es] ambiental[es] y destructor[es] del acuífero de Salinas".[12] Finalmente, alegaron que los Apelados invadieron la propiedad privada donde pretendían construir el polígono.[13]

En respuesta, los Apelados presentaron *Contestación a Solicitud de Injunction Preliminar y Permanente.*[14] En esta, negaron todos los hechos según expuestos por la parte Apelante y reclamaron que "[l]a finca donde se desarrolla[ba] el Polígono de Tiro est[aba] sujeta a Condiciones Restrictivas y Servidumbres de Equidad".[15] A su vez, instaron acción de *injunction* bajo el Artículo 14.1 de la Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161-2009, 23 LPRA sec. 9024, por considerar que estaban haciendo la construcción del polígono sin los permisos gubernamentales correspondientes. En vista de lo anterior, argumentaron que procedía ordenar la paralización del aludido proyecto.[16]

---

[10] Véase SUMAC-TPI, Entrada Núm. 300, pág. 1.
[11] *Íd.*, pág. 2.
[12] *Íd.*, pág. 4.
[13] *Íd.*, pág. 2.
[14] Véase SUMAC-TPI, Entrada Núm. 25.
[15] *Íd.*, pág. 12.
[16] *Id.*, págs. 15-16.

Por entender que estos reclamos eran improcedentes, la parte Apelante presentó *Moción Solicitando Desestimación de Reconvención y Otros Asuntos Relacionados al Alegado Impacto del Proyecto de Polígono sobre el Acuífero del Sur*, el 26 de mayo de 2022.[17] En vista de lo anterior, la parte Apelada presentó *Solicitud de Desestimación por Falta de Legitimación Activa y Solicitud de Sentencia Sumaria* el 2 de junio de 2022.[18] Luego de considerar los planteamientos esbozados por las partes, el foro primario declaró *No Ha Lugar* ambas peticiones.[19]

Inconforme con esta decisión, el Apelante radicó *Moción en Solicitud de Reconsideración, Suplementando Solicitud de Desestimación de Reconvención y Solicitud de Vista Ocular.*[20] Surge del expediente que, en esta instancia, sometió por primera vez el *Informe Pericial sobre las Condiciones Hidrogeológicas de un Predio en el Barrio del Municipio de Salinas y el Barrio Pozo Hondo del Municipio de Guayama (Caso Número: SA2022CV00024*) como anejo.[21] El tribunal *a quo* emitió *Resolución* el 4 de agosto de 2022 y declaró *No Ha Lugar* la *Reconsideración* relacionada con la denegatoria de la Desestimación de Reconvención.[22]

Acto seguido, el 7 de agosto de 2022, los Apelados presentaron *Moción in Limine* en la cual adujeron que "**no [se había] autenticado, no se [había] establecido su pertinencia en el caso y sin la cualificación de la prueba pericial, el informe no [era] admisible y [constituía] prueba de referencia".** (Énfasis omitido).[23] A la luz de tales fundamentos, el foro primario emitió *Resolución* el 8 de agosto de 2022 y declaró *Con Lugar* la *Moción in Limine*. Como consecuencia, el aludido informe pericial se entendió

---

[17] Véase SUMAC-TPI, Entrada Núm. 42.
[18] Véase SUMAC-TPI, Entradas Núm. 44-52.
[19] Véase SUMAC-TPI, Entradas Núm. 61 y 63.
[20] Véase SUMAC-TPI, Entrada Núm. 64.
[21] Véase SUMAC-TPI, Entrada Núm. 64, Anejo 1.
[22] Véase SUMAC-TPI, Entrada Núm. 65.
[23] Véase SUMAC-TPI, Entrada Núm. 66, pág. 3.

por no puesto.[24] Inconforme con este dictamen, el Apelante recurrió ante esta Curia por medio de *Certiorari* en el recurso KLCE202200973, el cual fue denegado mediante *Resolución* emitida el 17 de octubre de 2022.[25]

Posteriormente, luego de efectuado el proceso de descubrimiento de prueba por ambas partes, los Apelados presentaron *Solicitud de Sentencia Sumaria Para la Causa de Acción de Difamación* el 11 de junio de 2024.[26] Allí, en síntesis, alegaron que las expresiones publicadas por el señor Cora Collazo se fundamentan en "prueba documental recibida por los residentes de Ranchos Guayama que están en contra de la construcción de un polígono de tiro".[27] Además, aludieron que los Apelantes eran figuras públicas, por tanto, las expresiones vertidas al haber sido realizadas con malicia real, están protegidas por la figura de la hipérbole retórica. Por todo lo cual, entendían que procedía la desestimación de la causa de acción de difamación.

Considerados los planteamientos de las partes, el foro primario dictó *Sentencia Parcial* el 11 de junio de 2025.[28] Esta fue posteriormente enmendada el 14 de julio de 2025.[29] Por virtud de la *Sentencia Enmendada*, el foro *a quo* formuló las siguientes determinaciones de hechos incontrovertidos:

(1) El proyecto de construcción del polígono de tiro fue comenzado por CODEPOLA y el señor Ariel Torres Meléndez. Al momento en que los Demandados presentaron su Reconvención, CODEPOLA ya no era promovente del proyecto de construcción.

(2) El promovente del proyecto de construcción del polígono de tiro lo es el señor Ariel Torres Meléndez.

(3) La finca donde se pretende construir el polígono de tiro es propiedad del señor Roberto Ramos Colón y su esposa la señora Rosa Eneida León Díaz.

(4) El 19 de junio de 2021, el señor Ariel Ramos otorgó un *Contrato Alquiler con Opción de Compraventa*, mediante el cual recibía del matrimonio Ramos-León, en alquiler

---

[24] Véase SUMAC-TPI, Entrada Núm. 69.
[25] Véase SUMAC-TPI, Entrada Núm. 82.
[26] Véase SUMAC-TPI, Entrada Núm. 246.
[27] *Íd.*, pág. 31.
[28] Véase SUMAC-TPI, Entrada Núm. 290.
[29] Véase SUMAC-TPI, Entrada Núm. 300.

con opción de compra el predio de terreno donde pretendía construir el polígono de tiro.

(5) Según surge del *Contrato Alquiler con Opción de Compraventa*, la propiedad del matrimonio Ramos-León se encuentra localizada en Vistas del Caribe, Carr. 706 Km. 2 Hm 8, Barrio Aguirre, Salinas, Puerto Rico. La misma está inscrita en el folio 294, del tomo 228, finca número 9094, en el Registro de la Propiedad de Guayama, con número de catastro 418-000-004-31-00.

(6) El señor Ariel Torres Meléndez comenzó un proceso de limpieza de corteza y movimiento de terreno en el predio donde se pretendía construir el polígono de tiro sin tener los permisos correspondientes.

(7) El 17 de junio de 2021, la parte Demandante solicitó y consiguió que la OGPE les concediera un Permiso Simple para la Limpieza de Corteza, con el número PCT-006719.

(8) El 24 de agosto de 2021, el sargento Carlos Claudio Sánchez del Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales, llevó a cabo una inspección de los trabajos que se estaban realizando para la construcción del polígono de tiro.

(9) El 24 de agosto de 2021, el sargento Carlos Claudio Sánchez, encontró que el permiso, el cual estaba a nombre del señor Roberto Ramos Colón, era para la limpieza de capa vegetal y no para construcción. Además, encontró que el permiso de limpieza ya estaba vencido.

(10) El 24 de agosto de 2021, el sargento Carlos Claudio Sánchez, encontró que durante los trabajos de limpieza también se había llevado a cabo construcción de terrazas.

(11) El 24 de agosto de 2021, el sargento Carlos Claudio Sánchez, le informó al señor Ariel Torres Meléndez que estaba violando las cláusulas del permiso de limpieza. Debido a que no tenía un permiso de construcción, les entregó una orden de cese y desista para paralizar los trabajos.

(12) El 9 de septiembre de 2022, se presentó una *Querella* ante el Departamento de Recursos Naturales y Ambientales, en contra de los señores Ariel Torres Meléndez y Roberto Ramos Colón, por las supuestas violaciones encontradas el día 24 de agosto. En esta se les citó a los querellados a una Vista Administrativa a celebrarse el 21 de octubre de 2022.

(13) Para la fecha en que se presentó la enmienda a la Reconvención, ya los trabajos de construcción se encontraban paralizados.

(14) La finca donde se pretende llevar a cabo la construcción del polígono de tiro es de propiedad del señor Roberto Ramos Colón, quien la adquirió mediante Escritura Pública Número 18 de Compraventa, otorgada el 13 de marzo de 2001, ante el abogado y notario, el Lcdo. Julio Martínez Ortiz.

(15) En su *Solicitud de Sentencia Sumaria Para la Causa de Acción de Difamación* presentada el 11 de junio de 2024, los Demandados aceptaron el contenido de los anejos 3 al 8 presentados con la *Demanda Enmendada.*

(16) El anejo 3 de la *Demanda Enmendada* consiste en una publicación con información y fotos titulado "La

Construcción Ilegal del Campo de Tiro de CODEPOLA en Ranchos Guayama".

(17)  Del anejo 3 de la *Demanda Enmendada* no se desprende su fecha de publicación.

(18)  El anejo 4 de la *Demanda Enmendada* consiste en una publicación escrita donde, entre otras cosas, dice "Es hora de detener a estos criminales ambientales".

(19)  Del anejo 4 de la *Demanda Enmendada* no se desprende su fecha de publicación.

(20)  El anejo 5 de la *Demanda Enmendada* consiste en una foto que incluye al señor Ariel Torres, imágenes de los trabajos realizados en el terreno y se encuentra rodeado de las palabras dañar, contaminación, destrucción inmoral, ilegal y abuso.

(21)  Del anejo 5 de la *Demanda Enmendada* no se desprende su fecha de publicación.

(22)  El anejo 6 de la Demanda Enmendada contiene una publicación escrita y una foto con las palabras "Dile No A Los Criminales Ambientales".

(23)  El anejo 6 de la Demanda Enmendada no contiene fecha de su publicación.

(24)  El anejo 7 de la Demanda Enmendada consiste en una publicación con tres fotos y las palabras "Enemigos de el Acuéfero [sic], la tranquilidad...", entre otras.

(25)  El anejo 7 de la Demanda Enmendada no contiene la fecha de su publicación.

(26)  El anejo 8 de la Demanda Enmendada consiste en una imagen de una publicación solicitando donaciones. El mismo establece que fue "...creado para recaudar fondos para pagar la defensa de la comunidad y del Acuífero del Sur."

(27)  El anejo 8 de la Demanda Enmendada no contiene la fecha de su publicación.

(28)  El anejo 9 de la Demanda Enmendada consiste en un Informe Pericial preparado por el hidrólogo Ángel Román-Más sobre las condiciones hidrológicas del predio de terreno donde se pretende construir el polígono de tiro. Además, contiene conclusiones sobre el efecto de la construcción en los sistemas hidrológicos del área.

(29)  El Informe Pericial, preparado por el señor Ángel Román-Más, fue preparado el 22 de julio de 2022.[30]

De conformidad con tales determinaciones de hechos, el foro primario declaró *Ha Lugar* la *Solicitud de Sentencia Sumaria Para la Causa de Acción de Difamación* y, por consiguiente, *No Ha Lugar* la *Demanda* presentada por los Apelantes por alegada difamación, libelo y calumnia.[31]

---

[30] *Íd.*
[31] *Íd.*

Inconformes con el dictamen del foro *a quo*, el 17 de noviembre de 2025, los Apelantes presentaron el recurso de epígrafe e imputaron los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ EL TPI AL DESESTIMAR LA CAUSA DE ACCIÓN SOBRE DIFAMACIÓN Y LIBELO CONFORME A LAS DETERMINACIONES DE HECHOS Y DE DERECHO CONTENIDAS EN LA SENTENCIA ENMENDADA Y RELACIONADAS CON LA HIPÉRBOLE RETÓRICA Y LA MALICIA REAL.

> SEGUNDO ERROR: ERRÓ EL TPI AL DESESTIMAR LA CAUSA DE ACCIÓN SOBRE DIFAMACIÓN Y LIBELO PUES SE PRIVÓ A LA PARTE PERTINENTE Y ANUNCIADA PARA REFUTAR LAS ALEGACIONES DE LA PARTE DEMANDADA-RECURRIDA.[32]

El 21 de noviembre de 2025, esta Curia emitió *Resolución* en la que se le concedió a la parte Apelada hasta el miércoles, 17 de diciembre de 2025 para presentar su alegato en oposición.[33]

Posteriormente, el 30 de noviembre de 2025, la parte Apelada presentó *Solicitud Urgente de Desestimación por Falta de Jurisdicción al Amparo de la Regla 83 (B) del Reglamento de este Tribunal*, en la cual alegó que el término para acudir ante esta Curia había vencido, por lo que el recurso estaba prescrito y carecíamos de jurisdicción para atenderlo.[34] Así las cosas, le concedimos un término de cinco (5) días a la parte Apelante para presentar su postura.[35]

Oportunamente, el 8 de diciembre de 2025, los Apelados presentaron *Moción en Cumplimiento de Orden*, en la que expusieron que, dado a una serie de cuestiones procesales esbozadas previamente, el periodo para acudir a este Foro comenzó a transcurrir el 16 de octubre de 2025. Por lo tanto, razonaron que la acción no había prescrito.[36] Examinadas las mociones, declaramos *No Ha Lugar* a la solicitud de desestimación y concedimos a la parte apelada hasta el 3 de marzo de 2026 para exponer su posición.[37]

---

[32] Véase SUMAC-TA, Entrada Núm. 1, pág. 12.
[33] Véase SUMAC-TA, Entrada Núm. 2.
[34] Véase SUMAC-TA, Entrada Núm. 3.
[35] Véase SUMAC-TA, Entrada Núm. 4.
[36] Véase SUMAC-TA, Entrada Núm. 5.
[37] Véase SUMAC-TA, Entrada Núm. 8.

El 2 de marzo de 2026, los Apelados sometieron *Alegato en Oposición a Apelación*.[38] En esta, solicitaron que confirmáramos la *Sentencia* dictada por el foro primario y resolviéramos que los Apelantes presentaron una demanda temeraria ya que no tenían causa de acción por difamación. Cónsono con lo antes expuesto, solicitaron "la imposición de la totalidad de los honorarios de abogados y gastos en que incurrieron los Apelados e imponer una sanción adicional a la parte Apelante por la frivolidad y temeridad de este Recurso de Apelación, imponiendo $20,000.00 en honorarios de abogado".[39]

Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

## II.
### A. Sentencia Sumaria

La sentencia sumaria es el mecanismo procesal, cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a fondo. *Conklin v. Passalacqua*, 217 DPR ___ (2026), 2026 TSPR 18, pág. 4; Véase, además, *Soto y otros v. Sky Caterers*, 215 DPR___ (2025), 2025 TSPR 3, pág. 10. A tales efectos, la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, permite que, en un litigio, cualquiera de las partes le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra*. No obstante, para que una sentencia sumaria proceda, es necesario que de los documentos que la acompañan, surja de

---

[38] Véase SUMAC-TA, Entrada Núm. 9.
[39] *Íd.*, págs. 31-32.

manera preponderante la inexistencia de controversia sobre los hechos medulares del caso. *Conklin v. Passalacqua, supra.*

Para demostrar eficientemente la falta de controversia sobre hechos esenciales, el promovente de la sentencia sumaria debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su entender, no hay controversia. Regla 36.3 de Procedimiento Civil, *supra.* Ahora bien, si el foro primario identifica que existen hechos materiales en controversia, entonces está privado de dictar sentencia sumaria. Sobre este particular, nuestra más Alta Curia ha definido el concepto hecho material de la siguiente forma: un hecho material o esencial es "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Consejo de Tit. v. Rocca Dev. Corp., et als.*, 215 DPR___ (2025) 2025 TSPR 6, pág. 15. En virtud de lo anterior, la parte promovente tiene el deber de exponer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. *Soto y otros v. Sky Caterers, supra*, pág. 11.

En cuanto a la revisión de las solicitudes de sentencias sumarias, en *Meléndez González et al. V. M. Cuebas*, 193 DPR 100 (2015), el Tribunal Supremo de Puerto Rico estableció el estándar específico que corresponde aplicar a nivel apelativo. A esos efectos, nuestro Máximo Foro ha dispuesto que el Tribunal de Apelaciones debe: (1) examinar de *novo* el expediente y aplicar los criterios establecidos en la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa; (2) revisar que tanto la moción de sentencia sumaria, como su respectiva oposición, cumplen con los requisitos de forma codificados en la precitada regla; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales

encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018).

Así pues, planteada una revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que, debe evaluar las mociones presentadas en el foro primario y cumplir con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra*, al emitir su dictamen. *Meléndez González et al. V. M. Cuebas*, *supra*, pág. 118. "[L]a revisión del foro apelativo conlleva examinar de *novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor". *Birriel Colón v. Econo y otros*, 213 DPR 80, 91-92 (2023) citando a Meléndez González et al. V. M. Cuebas, *supra*.

En tal sentido, como parte de nuestra función revisora, es nuestro deber evaluar todos los documentos que obren en el expediente de manera tal que, previo a determinar la procedencia de una solicitud de sentencia sumaria, se deba realizar un balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles. *BPPR v. Cable Media*, *supra*, pág. 9 (citas omitidas). Cónsono con lo anterior, en el ejercicio de nuestra función revisora, estamos limitados a: (1) considerar los documentos que se presentaron ante el foro primario; (2) determinar si existe o no controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó correctamente. *Batista Valentín v. Batista Valentín*, 216 DPR ___ (2025), 2025 TSPR 93, citando a *Birriel Colón v. Econo y otro*, 213

DPR 80, 91 (2023). Véase, además, *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024).

### B. *Difamación*

Nuestro ordenamiento jurídico define la difamación como "la intención que se deriva del acto de desacreditar a una persona mediante la publicación de información falsa contra su prestigio, fama o reputación". *Torres, Santana v. Noticentro PR et al.*, 210 DPR 783 (2022) (Sentencia) citando a *Krans Bell v. Santarrosa*, 172 DPR 731 (2007) (Resolución). Véase, además, *Pérez v. El Vocero de P.R.*, 149 DPR 427, 441 (1999); La Sección 2 de la Ley de Libelo y Calumnia de Puerto Rico (Ley de Libelo y Calumnia) del 19 de febrero de 1902, 32 LPRA sec. 3141 *et seq*, define el libelo como:

> [L]a difamación maliciosa que públicamente se hace en contra de una persona, **por escrito**, impreso, signo, retrato, figura, efigie u otro medio mecánico de publicación, tendente a exponer a dicha persona al odio del pueblo o a su desprecio, o a privarle del beneficio de la confianza pública y trato social, o a perjudicarle en sus negocios; o de otro modo desacreditarle, menospreciarle o deshonrarle, o cualquiera difamación maliciosa publicada, como antes se ha dicho, con la intención de denigrar o deprimir la memoria de un muerto y desacreditar o provocar a los parientes y amigos sobrevivientes. (Énfasis suplido). 32 L.P.R.A 3142.

A su vez, la mencionada legislación define la calumnia como "la publicación falsa o ilegal, que no sea un libelo, y que impute a una persona la comisión de un hecho constitutivo de delito, o tienda directamente a perjudicarle con relación a su oficina, profesión, comercio o negocios, o que, como consecuencia natural, le cause daños reales y efectivos". 32 LPRA sec. 3143.

La causa de acción por daños y perjuicios causados como consecuencia de expresiones difamatorias, sean mediante libelo o calumnia, se fundamenta en el Artículo 1536 del Código Civil, 31 LPRA sec. 10801. Sin embargo, la fuente primaria de protección contra expresiones difamatorias proviene de la Carta de Derechos de la Constitución de Puerto Rico, *infra*, y de la Primera Enmienda

de la Constitución de Estados Unidos de América, Const. EE. UU., LPRA, Tomo I, ed. 2023, pág. 182. *Pérez v. El Vocero de P.R.*, *supra*, pág. 441.

En específico, la Sección 8 del Artículo II de nuestra Constitución, dispone que "toda persona tiene derecho a protección de ley contra ataques abusivos a su honra, su reputación y a su vida privada o familiar". Art. II, Sec. 8, Const. PR, LPRA, Tomo 1, ed. 2023, pág. 328. El ejercicio de este derecho, mediante la acción por difamación, tiene que contraponerse al ejercicio del derecho fundamental de libertad de expresión y de prensa. Véase *Torres, Santana v. Noticentro PR et al.*, *supra*; *Porto y Siurano v. Bentley P.R. Inc.*, 132 DPR 331 (1992); *Méndez Arrocho v. El Vocero de P.R.*, 130 DPR 867 (1992). Por otra parte, la Sección 4 del Artículo II de la Constitución de Puerto Rico, que establece tal derecho, dispone que "no se aprobará ley alguna que restrinja la libertad de palabra o de prensa". Art. II, Sec. 4, Const. PR, LPRA, Tomo 1, ed. 2023, págs. 292-93. Aunque estas disposiciones constitucionales son de mayor jerarquía, la Ley de Libelo y Calumnia "sobrevive solamente en tanto y en cuanto es compatible con la Constitución". *Pérez v. El Vocero de P.R.*, *supra*, pág. 441.

Al amparo de este balance de intereses, la doctrina de difamación "se divide en dos vertientes, cada una con sus respectivas exigencias constitucionales, según la clasificación del demandante como funcionario o figura pública, o como persona privada". *Torres, Santana v. Noticentro PR et al.*, *supra*, pág. 794, citando a *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 147 (2013).

La determinación de si un demandante es o no figura pública, a los fines de exigirle en una acción de difamación que establezca la malicia real del demandado, se rige por consideraciones funcionales. Debe ponerse menos énfasis en el análisis abstracto del estatus de

la persona afectada y más énfasis en el contexto específico en que se genera la controversia. Se debe considerar la naturaleza de la declaración alegadamente difamatoria, el auditorio a que se dirige, los intereses que se sirven o vulneran, y la relación funcional entre estos factores. *Soc. de Gananciales v. López*, 116 DPR 112 (1985).

Al respecto, el Tribunal Supremo ha expresado que existen múltiples tipos de figuras públicas: (1) la figura pública para todos los propósitos, que por su posición oficial, su poder o su señalado envolvimiento en los asuntos públicos ha alcanzado fama o notoriedad en la comunidad; 2) la figura pública limitada, cuyo carácter de tal se limita a los asuntos en los cuales voluntariamente se ha lanzado a la palestra pública; y 3) la persona que involuntariamente se convierte en un personaje público. *García Cruz v. El Mundo, Inc.*, 108 D.P.R. 174, 178 (1978).[40]

De tratarse de una figura pública, la parte promovente deberá demostrar que: (1) la expresión difamatoria es falsa; (2) la publicación causó daños reales y (3) se publicó a sabiendas de que era falsa o con grave menosprecio de su falsedad o veracidad. *Torres, Santana v. Noticentro PR et al.*, *supra*, pág. 794, citando a *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 149 (2013). Este último elemento se ha denominado en la jurisprudencia como **malicia real**.

**Ahora bien, conviene destacar que, es norma firmemente establecida que, la malicia real no se presume; por lo que, se deberá probar mediante prueba clara, robusta y convincente**. *Íd.* No basta con una afirmación generalizada de que el demandado obró con malicia real, sino que tiene que establecerse con hechos

---

[40] Véase, además, *Torres Figueroa v. Vélez Rivera y otros*, 210 DPR 665, 702 (2022) (Sentencia) (Martínez Torres, opinión disidente), para una discusión sobre el concepto de la figura pública limitada. ("Para establecer que una persona es una figura pública para todos los propósitos, es necesario que exista evidencia de fama general o notoriedad en la comunidad. *Gertz v. Robert Welch, Inc.*, [418 US 323, 352 (1974)]. Ahora bien, para establecer que una persona es una **figura pública limitada** es necesario demostrar algo más. Esto es, que (1) existe una "controversia pública" y (2) que el demandante está involucrado en esa "controversia pública". (Énfasis suplido).

específicos. *Meléndez Vega v. El Vocero de PR, supra,* pág. 149; *García Cruz v. El Mundo, Inc., supra,* pág. 180. Prueba de mala voluntad u odio tampoco es prueba suficiente para demostrar por sí el elemento requerido de malicia real. *García Cruz v. El Mundo, Inc., supra,* págs. 180-181.

Debemos señalar, además, que el estándar de prueba es más riguroso en estos casos, precisamente porque se desea armonizar de un lado el derecho a la libertad de expresión y de otro, el derecho a la dignidad y la honra. *Soc. de Gananciales v. El Vocero de Puerto Rico, Inc.,* 135 DPR 122, 127 (1994); *Soc. de Gananciales v. López, supra,* pág. 117. En cuanto a este particular, el Tribunal Supremo de Puerto Rico decidió en *Garib v. Clavell,* 135 DPR 475, 499-500 (1994) que, "[n]o es suficiente alegar la malicia real o repetir las palabras sacramentales de la doctrina, de manera conclusoria, para determinar la existencia de la malicia real". En cambio, de tratarse de una figura privada, el estándar de prueba utilizado es el de negligencia. *Torres, Santana v. Noticentro PR et al., supra,* pág. 794, citando a *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 149 (2013).

### C. Hipérbole Retórica

La figura de la hipérbole retórica es una doctrina adoptada por el Tribunal Supremo de Estados Unidos, y luego igualmente acogida por el Tribunal Supremo de Puerto Rico, que se utiliza como defensa ante las acciones de difamación. Nuestro Máximo Foro judicial ha expresado que, bajo esta doctrina, "una expresión alegadamente difamatoria **no es accionable** si se utiliza en sentido figurativo, flexible y no necesariamente por su significado literal". (Énfasis suplido). *Garib Bazain v. Clavell, supra,* pág. 486. Igualmente, que las "expresiones humorísticas han recibido especial protección bajo la Primera Enmienda de la Constitución de Estados Unidos. El humor, sea en forma de sátira, parodia, chistes, etc.,

rinde una función dual al entretener y servir de crítica social simultáneamente. Como tal, amerita una protección especial en nuestra sociedad*". Íd.*, págs. 487–88.

De hecho, el profesor Rodney A. Smolla ha expresado que "**incluso las acusaciones de delito pueden**, en ciertas circunstancias, **caracterizarse correctamente como mera hipérbole retórica**, como cuando se hacen acusaciones de forma figurada en medio de un debate acalorado. Este tipo de declaraciones son un tipo de hipérbole retórica normalmente asociado a la política y el discurso público". (Énfasis suplido) (Traducción suplida). § 23:6. Requirement of a false statement of fact, 3 Smolla & Nimmer on Freedom of Speech § 23:6, citando a *McDougal v. Fox News Network*, LLC, 2020 WL 5731954, *6 (S.D. N.Y. 2020) y *Clifford v. Trump*, 339 F. Supp. 3d 915, 925, 101 Fed. R. Serv. 3d 1439 (C.D. Cal. 2018), aff'd, 818 Fed. Appx. 746 (9th Cir. 2020).[41]

### III.

De entrada, es menester destacar que, toda vez que el recurso de epígrafe versa sobre la revisión de un dictamen resuelto por la vía sumaria, le corresponde a este foro revisor realizar un examen de *novo*, tanto de la solicitud de sentencia sumaria y sus anejos, así como de su oposición. Efectuado el análisis correspondiente, resolvemos que los Apelados cumplieron íntegramente con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.

Sin embargo, en su escrito de oposición, los Apelantes omitieron hacer referencia a los párrafos enumerados por los Apelados, con indicación de cuáles hechos entendían de buena fe

---

[41] El texto original lee: "Even accusations of crime may in some circumstances be properly characterized as mere rhetorical hyperbole, as when they are accusations made figuratively in the midst of heated debate. Such statements are just one type of the "'rhetorical hyperbole' normally associated with politics and public discourse in the United States."

controvertidos y cuáles no. De igual modo, tampoco cumplieron con su deber de presentar evidencia sustancial para controvertir la prueba presentada por la Parte Apelada. Ante tal realidad, establecemos que, cuando una parte se opone a una solicitud de sentencia sumaria y no controvierte los hechos alegados en esta, los hechos se darán por admitidos y, de proceder, la sentencia sumaria se dictará en contra de la parte promovida. Véase, Regla 36.3 (c) y (d) de Procedimiento Civil, *supra.*

Atendido lo anterior, nos corresponde revisar si existen hechos materiales en controversia que impidan acoger la vía sumaria. Respondemos en la negativa. Tras examinar con sumo cuidado la petición de sentencia sumaria, así como la oposición, resolvemos que no encontramos hechos sustanciales en controversia. En vista de ello, adoptamos las determinaciones de hechos formuladas por el foro primario como hechos materiales incontrovertidos por estar respaldadas correctamente en la prueba obrante en el expediente que acompañó la solicitud de sentencia sumaria.

Ante este cuadro, solo nos resta determinar si el foro primario aplicó correctamente el derecho vigente a la controversia ante nuestra consideración. Veamos las alegaciones de las partes a tales efectos.

En esencia, los Apelantes señalan que existen controversias de hechos respecto a los elementos que constituyen malicia real e hipérbole retórica. Específicamente, aducen que los Apelados tenían conocimiento de que las declaraciones vertidas eran falsas, por tanto, razonan que se hicieron con malicia real. Por otro lado, solicitan nuestra intervención apelativa para garantizar su derecho al debido proceso de ley, pues argumentan que el foro *a quo* incidió al no permitir la admisión del informe pericial.

Ante tales señalamientos, los Apelados nos invitan a sostener la *Sentencia* apelada por considerar que es conforme a derecho. Estos alegan que "[el señor Torres Meléndez], siendo **una figura pública**, con acceso a los medios televisivos, radiales y tecnológicos, **tiene que probar** -a[ú]n en la sumaria- que tiene prueba **que demuestra que la publicación se hizo con grave menosprecio de la verdad**". (Énfasis suplido).[42] Cónsono con lo anterior, señalan que las publicaciones efectuadas por los Apelados, particularmente por el señor Cora Collazo, surgen de la prueba documental que tenían disponible, por lo que, no puede considerarse que fueron realizadas con malicia real. Respecto a los argumentos sobre la presentación del informe pericial, arguyen que no se admitió como evidencia por presentarse de forma contraria a lo dispuesto en las Reglas de Evidencia, 32 LPRA Ap. VI.

Luego de evaluar sosegadamente el recurso que nos ocupa, determinamos que el foro primario actuó correctamente al resolver que la defensa de hipérbole retórica ampara a la Parte Apelada. Adelantamos que el dictamen impugnado es consistente con la normativa esbozada en el acápite anterior y procura garantizar el ejercicio de la libertad de expresión que asiste a dicha parte. Veamos.

En primer lugar, conviene reconocer que, CODEPOLA es una persona jurídica que se dedica a abogar a favor del derecho al acceso de las armas. En este menester, el señor Torres Meléndez es el presidente de esta corporación, quien funge como defensor del derecho al acceso de armas, por lo que, se ha lanzado a la palestra pública a tales efectos. Así precisado, razonamos que, dicha entidad corporativa es una figura pública, mientras que su presidente es

---

[42] Véase SUMAC-TA, Entrada Núm. 9, pág. 27.

una figura pública limitada. Ello, pues, ambos participan activamente en la discusión pública del acceso a las armas.

Por ambos ser figuras públicas, el estándar de prueba que nos corresponde aplicar es aquel concerniente a la evaluación de la existencia de malicia real. De conformidad con lo anterior, le competía a los Apelantes demostrar que, en efecto, las declaraciones alegadamente difamatorias se hicieron con conocimiento de que eran falsas o con grave menosprecio de su falsedad. *Véase, Garib v. Clavell, supra,* pág. 499-500. Por tanto, debían respaldar sus alegaciones mediante la presentación de hechos concretos y específicos, y con prueba clara, robusta y convincente. Sin embargo, se limitaron a argumentar que: (1) los Apelados no podían probar que los Apelantes realmente estaban contaminando el terreno; (2) que existe un informe pericial que sustenta su posición; y que, como consecuencia, (3) los Apelados tenían conocimiento de que sus expresiones eran falsas. A la luz de lo discutido, resolvemos que estos no demostraron que la Parte Apelada emitió expresiones con malicia real en su contra.

Precisamos que las declaraciones brindadas por los Apelados, a modo de opinión, surgieron como reacciones hacia documentos públicos oficiales, contenido de radio y expresiones manifestadas por funcionarios públicos en cuanto al proyecto del polígono.[43] De hecho, surge de la deposición sometida por la parte Apelante que, el señor Cora Collazo desconocía de la existencia del informe pericial cuando emitió las declaraciones en cuestión, y tampoco tenía el conocimiento profesional requerido para saber con certeza si el polígono podía causar daño al acuífero.[44] En vista de ello,

---

[43] Véase SUMAC-TPI, Entrada Núm. 246, Anejos 1-22.
[44] Un ejemplo de esto se ve en el siguiente intercambio:
     P Al día de hoy, ¿usted se reafirma en que el polígono de tiro está
        sobre el Acuífero del Sur?
     R Así se desprende del informe de Recursos Naturales.
SUMAC-TA, Entrada Núm. 1, Anejo *Deposición a Sr. José Cora el 20 de noviembre de 2023,* págs. 39-40.

reiteramos que la Parte Apelante no demostró que los Apelados actuaron con malicia real al emitir sus expresiones.

Por otro lado, en cuanto al reclamo presentado por la señora Castro Santana, debemos puntualizar que, esta es una figura privada. En tales instancias, la jurisprudencia vigente reconoce que opera el estándar probatorio de negligencia, siempre y cuando exista una alegación de que se emitió una expresión falsa en su contra. Véase, *Torres, Santana v. Noticentro PR et al.*, *supra*, pág. 794, citando a *Meléndez Vega v. El Vocero de PR*, *supra*, pág. 149. Sin embargo, en el caso de epígrafe, no procede activar dicho examen probatorio, toda vez que las expresiones impugnadas en la *Demanda* no se presentaron en contra de la señora Castro Santana, sino en contra de su esposo.[45] Sobre este particular, el foro primario concluyó lo siguiente:

> **Claramente, la inclusión de la señora Castro como demandante está fundamentada en los alegados ataques difamatorios en contra de su esposo. Por consiguiente, el reclamo de la señora Castro depende del resultado de la reclamación interpuesta por su esposo**.[46] (Énfasis nuestro).

Establecido lo anterior, determinamos que, la reclamación instada por la señora Castro Santana es improcedente en derecho pues no demostró que los Apelados vertieron expresiones falsas en su contra.

Por otra parte, el señor Torres Meléndez nos solicita que concluyamos que expresiones como "asesinos ambientales", "criminales ambientales" y "asesinos ambientales" no pueden ser categorizadas como hipérbole retórica. No le asiste la razón. Como

---

[45] *Soc. de Gananciales v. El Vocero de P.R.*, 135 D.P.R. 122, 122–23 (1994) ("El sistema de derecho común ha elaborado **la doctrina conocida como *of and concerning the plaintiff*** en el ámbito de las acciones por difamación. Esta doctrina **requiere que en toda acción por difamación el demandante pruebe que las expresiones difamatorias se refieran a su persona de modo particular**. Este requisito de referencia específica limita el derecho a demandar por falsedad injuriosa, ya que concede dicho derecho a aquellos que son objeto directo de críticas, y se le niega a aquellos que meramente se quejan por manifestaciones no específicas que estiman que los perjudican." (Énfasis suplido.))

[46] Véase SUMAC-TA, Entrada Núm. 300, pág. 15.

hemos reseñado, la figura de la hipérbole retórica es una defensa que protege a aquellas personas que brindan expresiones humorísticas y deliberadamente exageradas en forma de sátira, parodia, chistes, etc., para transmitir una idea o una emoción intensa. Así, pues, esta figura, protegida constitucionalmente, no busca ser tomada de forma literal, sino que su finalidad es captar la atención del público mediante una expresión vulgar o coloquial. Véase, *Garib Bazain v. Clavell, supra*, págs. 487–88.

En atención a lo anterior, evaluamos detenidamente las imágenes anejadas al expediente en conjunto con las palabras contenidas en ellas. Resulta evidente que se tratan de declaraciones exageradas que pretenden ser jocosas, y a su vez, constituyen una crítica social en forma satírica. A continuación, procederemos a describir algunas de las imágenes anejadas al expediente a modo de ejemplo.

En un visual identificamos que se muestra al señor Torres Meléndez superpuesto en una caja de la muñeca Barbie como si él fuese el juguete junto a la frase "Edición Especial[:] Criminal Ambiental".[47] Otra muestra un póster de la película *La Sirenita,* de Disney, en el cual el rostro del señor Torres Meléndez sustituye el de la protagonista Ariel. Por encima del título de la película, se coloca la frase "El campo de tiro de CODEPOLA".[48] Por último, otra ilustración exhibe una foto del señor Torres Meléndez junto a las frases "Se Busca" y "Criminal ambiental y sumamente embustero"; esta parece simular un aviso utilizado para dar con el paradero de un delincuente.[49]

Ciertamente, las imágenes aludidas son declaraciones exageradas que pretenden hacer una crítica mediante expresiones

---

[47] Véase SUMAC-TA, Entrada Núm. 1, Anejo *Exhibit 1 Deposición a Sr. Cora – 20 de noviembre de 2023*, pág. 10.
[48] *Íd.*, pág. 2.
[49] *Íd.*, pág. 1.

satíricas. Por tanto, concluimos que se trata de expresiones que utilizan la hipérbole retórica y, por consiguiente, están cobijadas constitucionalmente por la libertad de expresión y no son accionables.

Atendido tal asunto, pasemos a discutir el segundo señalamiento de error, en el cual Parte Apelante arguye que el foro primario incidió al no permitirle presentar su informe pericial. No coincidimos con este argumento. Surge del expediente ante nos que, el informe pericial se sometió en contravención de las Reglas de Evidencia, *supra*. Por tal motivo, los Apelados presentaron la *Moción in Limine* para impugnar la presentación del referido documento. Luego de evaluar sus argumentos, el foro primario declaró *Con Lugar* dicha petición, en virtud la *Resolución* el 8 de agosto de 2022, y esta Curia declinó revisarla mediante *Certiorari*. Asimismo, consta en expediente que, el 20 de noviembre de 2023, la Parte Apelante intentó someter indebidamente el aludido informe durante la celebración de una deposición al señor Cora Collazo. Al respecto, conviene citar el siguiente intercambio surgido entre los representantes legales de las partes y el señor Cora Collazo:

P: [...] ¿Usted sabe que nosotros, como parte del proceso de esta causa de acción, nosotros preparamos un informe pericial?

R: Sí.

P: ¿Usted pudo examinar ese informe pericial?

R: No.

P: ¿No lo ha examinado?

R: No.

P: Muy bien. Yo se lo voy a mostrar para entonces examinarlo. Este. Discúlpame, Ariel. Mire, yo le voy a entregar un informe pericial que preparó el hidrólogo Ángel Román Más, con fecha del 22 de julio del 2022, ¿verdad? Ese informe se le ha hecho entrega a su representante legal, como parte del descubrimiento de prueba que hemos cursado a través del tiempo. Incluso obra en el expediente judicial. Le voy a pedir que lo examine brevemente. Por lo menos las primeras dos páginas contienen un resumen ejecutivo, que yo le voy a pedir que... en breve que lo lea en voz alta.

[El señor Cora Collazo procede a leer un extracto del informe.]

P: Oiga, después de haber hecho la lectura de ese documento, diga si es cierto o no es cierto que el hidrólogo Román Más concluye que es prácticamente imposible que el polígono de tiro propuesto tenga impacto alguno sobre las aguas subterráneas.

LCDO. COLÓN: Objeción a la pregunta. ¿Cuál es el propósito?

LCDO. CAMACHO: El que me conteste sí o no.

LCDO. COLÓN: Objeción a la pregunta.

LCDO. CAMACHO: Diga si esa es la...

LCDO. COLÓN: Él lo leyó, él lo leyó y es perfectamente válido, pero si el propósito es que eso entre como prueba sustantiva en la deposición, nosotros tenemos objeción.

LCDO. CAMACHO: Pero estamos haciendo una pregunta sobre el documento.

LCDO. COLÓN: Por eso. Pero que quede claro nuestra objeción.

LCDO. CAMACHO: Muy bien. Anotada.

LCDO. COLÓN: Que evidentemente eso es [prueba] de referencia y no...

LCDO. CAMACHO: Anotada.

LCDO. COLÓN: ...entre en evidencia.

LCDO. CAMACHO: Anotada. Pero que conteste.[50]

Tras un estudio detenido del expediente, colegimos que no se cometió el error segundo. Advertimos que la parte Apelante no presentó el informe pericial de conformidad con las normas probatorias, toda vez que dicho documento no se autenticó, y tampoco se constató su pertinencia para fines de la dilucidación de la controversia. Véanse, Reglas 401 y 901 de Evidencia, 32 LPRA Ap. VI, R. 401 y 901.

Conforme a todo lo anterior, es forzoso concluir que el foro primario actuó correctamente al desestimar el pleito por la vía sumaria. Reiteramos que la Parte Apelante no demostró que los Apelados actuaron con malicia real al emitir sus declaraciones, las cuales, a todas luces, están protegidas bajo la defensa de hipérbole retórica. En vista de ello, confirmamos el dictamen apelado, pues no reviste prejuicio, parcialidad, error manifiesto en la aplicación de norma jurídica sustantiva o procesal, por parte del foro *a quo*.

---

[50] Véase SUMAC-TA, Entrada Núm. 1, Anejo *Deposición a Sr. José Cora el 20 de noviembre de 2023,* págs. 19-24.

**IV.**

Por los fundamentos que anteceden, ***confirmamos*** la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones